```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                          Chapter 7

David Herz,                                     Case No. 11-42921-cec

                    Debtor.
-------------------------------------------------------------x
```

OPINION ON CLAIM OBJECTIONS

APPEARANCES

Rawle Pantaleon, Esq.  
175 Crown St.  
Brooklyn, New York 11225  
*Counsel for the Estate of David Herz*

Daniel W. White, Esq.  
Frankel Lambert Weiss Weisman & Gordon, LLP  
One Whitehall Street, 20th Floor  
New York, New York 10004  
*Counsel for Lexington Insurance*

CARLA E. CRAIG  
Chief United States Bankruptcy Judge

## INTRODUCTION

This matter comes before the Court on the motion filed on behalf of the Estate of David Herz, deceased, objecting to the claims of Lexington Insurance Company ("Lexington"). Lexington is the holder of three judgments against Esther Herz, wife of David Herz. Lexington filed three claims in this case against David Herz based upon alleged fraudulent transfers from Esther Herz to David Herz. Objections were filed on behalf of David Herz's estate to Lexington's claims, and a trial was held on the merits regarding Claim No. 3 and Claim No. 5. For the reasons stated below, the motion to expunge is granted and these claims are expunged.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

Lexington holds three judgments against David Herz's non-filing spouse, Esther Herz. Although David Herz is not named as a judgment debtor in any of the judgments, Lexington asserts a claim in this bankruptcy case by virtue of alleged fraudulent transfers between Esther Herz, David Herz, and their daughter, Libi Herz. These transfers involved the real property located at 1148 East 10th Street, Brooklyn, New York 11230 (the "Property"), the primary residence of the Herz family. David Herz died in 2013, and the Estate of David Herz, through Libi Herz as administrator, seeks to expunge Lexington's claims.

A.  The Bankruptcy Filing and Lexington's Claims

David Herz (the "Debtor") filed this case on April 8, 2011 (the "Filing Date"). Richard E. O'Connell was appointed as chapter 7 trustee (the "Trustee"). The Debtor received a discharge on July 20, 2011 (the "Discharge Date"), and the case was closed on January 17, 2012 without a distribution to creditors. (See Docket, Case No. 11-42921.) The Debtor died on January 4, 2013. (Joint Pre-Trial Order ¶ 5.2, ECF No 112 (hereinafter "JPTO").)[1] He was survived by his wife, Esther Herz, and his daughter, Libi Herz.[2] (JPTO ¶¶ 5.4, 5.6, ECF No. 112.) The case was reopened on motion of the Trustee on April 11, 2014 due to the discovery of assets. (Order Reopening Chapter 7 Case, ECF No. 27.) The order reopening the case provided that all proofs of claim be filed by July 10, 2014 (the "Bar Date"). (Order Reopening Chapter 7 Case, ECF No. 27.) The discovered assets consist of a bequest to the Debtor in the approximate amount of $223,000.00 from the estate of a relative in England who predeceased the Debtor. (JPTO ¶ 5.33, ECF No. 112.) On June 9, 2015, the Court issued an order directing that the bequest be turned over to the Trustee to be administered as property of the estate. (Order Directing Turnover of Estate Property, ECF No. 61.)

On January 7, 2015, Lexington filed three proofs of claim: Claim Nos. 3, 4, and 5. (See Claims Register, Case No. 11-42921.) Claim Nos. 3 and 5 were subsequently amended on June 5, 2015. (See Claims Register, Case No. 11-42921.) Each claim is based on a judgment against Esther held by Lexington and subsequent, alleged fraudulent conveyances between Esther and the Debtor.[3] Lexington asserted that, as a creditor of Esther, it is entitled to recover from the Debtor's

---

[1] All references to "ECF No." refer to the docket in this case, Case No. 11-42921, unless otherwise indicated.
[2] For convenience and clarity, the Herz family members will be referred to by their first names in this opinion.
[3] Claim No. 3 is based on a judgment entered in favor of First Select Receivables on December 15, 1999, in the amount of $7,127.75 (the "Credigy Judgment"). (JPTO ¶ 5.10, ECF No. 112.) The Credigy Judgment was assigned to Lexington on April 8, 2014. (Joint Stip. Ex. No. JS-8, ECF No. 106-8.) Claim No. 4 is based on a judgment entered in favor of Joseph Bogatz on May 2, 2005, in Supreme Court, Kings County, in the amount of $114,226.00 (the "Bogatz Judgment"). (JPTO ¶ 5.11, ECF No. 112.) The Bogatz Judgment was assigned to Lexington on July 28,

bankruptcy estate because of a scheme of fraudulent conveyances between Esther, the Debtor, and Libi, that was initiated and directed by Esther. (JPTO ¶ 6.PC5, 6.PC10, 6.PC15, ECF No. 112.) This alleged scheme culminated in a series of refinancing transactions in which the Debtor and Libi placed additional liens on the Property depleting almost all the equity in the Property. (JPTO ¶ 6.PC65-PC66, ECF No. 112.) Lexington asserted that this scheme and series of transactions constitute fraudulent conveyances pursuant to § 276 of the New York Debtor & Creditor Law ("NY DCL"). (JPTO ¶ 1, ECF No. 112.)

B.     The Property and the Alleged Fraudulent Transfers

Prior to the Filing Date, the Debtor, Esther, and Libi all resided at the Property. (JPTO ¶ 5.28, ECF No. 112.) Esther and Libi continue to reside at the Property. (JPTO ¶ 5.29, ECF No. 112.) The Property was purchased by Esther, in her name alone, in 1991. (JPTO ¶ 5.15, ECF No. 112; Trial Tr. 20:10-12, Mar. 1, 2016, ECF No. 109.) On April 3, 2006, Esther transferred the property from her name to herself and the Debtor jointly for no consideration (the "April 3 Transfer"). (Joint Stip. Ex. No. JS-18, Pl.'s 2, ECF No. 106-18; JPTO 5.17-5.18, ECF No. 112.) At that time, the Property was encumbered by a first mortgage held by Citibank, N.A. in the amount of $160,000.00, and a second mortgage of $85,000.00, for a total mortgage of $245,000.00 (the "Citi Mortgage"). (JPTO ¶ 5.16, ECF No. 112; Trial Tr. 20:13-16, 36:9-16, Mar. 1, 2016, ECF No. 109). Esther and the Debtor then conveyed the Property to Libi on August 29, 2006 (the "The August 29 Transfer"). (Joint Stip. Ex. No. JS-15, Pl.'s 6, ECF No. 106-15; JPTO 5.19, ECF No. 112.). The August 29 Transfer was also made for no consideration. (JPTO 5.20, ECF No. 112.) Both Esther and Libi testified that title searches were performed prior to the April 3 Transfer and

---

2011. (JPTO ¶ 5.13, ECF No. 112.) Claim No. 5 is based on a judgment entered against Esther Herz in Civil Court, Kings County on November 21, 2005, in the amount of $212,555.80, in favor of Broadway Ralph Associates, LLC (the "Broadway Ralph Judgment"). (JPTO ¶ 5.8, ECF No. 112.) The Broadway Ralph Judgment was assigned to Lexington on March 24, 2015. (JPTO ¶ 5.9, ECF No. 112.)

the August 29 Transfer and no judgments or liens were discovered. (Trial Tr. 30:14-16, Mar. 1, 2016, ECF No. 109; Trial Tr. 15-11-16, June 1, 2016, ECF No. 113.)

After the August 29 Transfer, on November 29, 2006, Libi took out a loan from Washington Mutual in the amount of $750,000.00 secured by a mortgage on the property (the "WaMu Mortgage"). (Trial Tr. 21:12-13, June 1, 2016, ECF No. 113; JPTO ¶ 5.21, ECF No. 112.) From these funds, approximately $250,000.00 was used to pay off the Citi Mortgage. (Trial Tr. 22:7-9, June 1, 2016, ECF No. 113.) Libi testified that the remainder of the funds were used to pay off her personal debt, purchase a car, make repairs to the house, and for other personal and family expenses. (Trial Tr. 23:1-25:4, June 1, 2016, ECF No. 113.) She further testified that there were no liens on the Property other than the Citi Mortgage when she took out the WaMu Mortgage. (Trial Tr. 27:7-13, June 1, 2016, ECF No. 113.)

On March 16, 2007, Libi conveyed the Property to herself and the Debtor (the "March 16 Transfer") for no consideration. (JPTO ¶ 5.23, ECF No. 112; Trial Tr. 49:21-24, Jun. 1, 2016, ECF No. 113.) Libi testified that she added the Debtor to the title to take advantage of better interest, tax, and insurance rates her father would receive as a senior citizen. (Trial Tr. 50:2-14, June 1, 2016, ECF No. 113). On September 17, 2016, Libi and the Debtor took out a new loan and mortgage on the Property in the amount of $900,000.00 from JP Morgan Chase Bank (the "Chase Mortgage"). (JPTO ¶ 5.26, ECF No. 112.) The Debtor also received a $60,000.00 line of credit from JP Morgan Chase Bank secured by the Property. (Trial Tr. 70:3-10, June 1, 2016, ECF No. 113.) The Debtor used a portion of the Chase Mortgage to satisfy the WaMu Mortgage. (Trial Tr. 68:25-69:6, June 1, 2016, ECF No. 113.) Both Esther and Libi testified that the Debtor used the balance of the Chase Mortgage to make repairs to the home, pay medical expenses, and to make payments on the Chase Mortgage. (Trial Tr. 68:22-24, 69:25-70:9, Mar. 1, 2016, ECF No. 109

5

122:17-123:5, Trial Tr. June 1, 2016. ECF No. 113). On October 2, 2007. Libi and the Debtor transferred the Property to the Debtor alone (the "October 2 Transer"). (JPTO ¶ 5.25, ECF No. 112.)

C. Procedural History

On April 23, 2015, the Estate of David Herz, by Libi Herz, administrator, filed a motion seeking to expunge Lexington's claims (the "Motion to Expunge"). (Motion to Expunge Claim, ECF No. 50.) Lexington filed an objection to the Motion to Expunge on May 18, 2015. (Objection, ECF No. 52.) The Court conducted a two-day trial on the Motion to Expunge on March 1, 2016 and June 1, 2016.[4] The parties submitted post-trial briefs on July 22 and 25, 2016.

## DISCUSSION

A proof of claim filed according to the Federal Rules of Bankruptcy Procedure (the "Rules") constitutes prima facie evidence of the validity of the claim. Fed. R. Bankr. P. 3001(f). "The party objecting has the initial burden of going forward and of introducing evidence sufficient to rebut the presumption of validity." In re Koloch, 416 B.R. 375, 378 (Bankr. E.D.N.Y. 2009), objections overruled, No. 8-07-73919-DEM, 2010 WL 1380375 (Bankr. E.D.N.Y. Mar. 31, 2010) (citing In re Allegheny Int'l, Inc., 954 F.2d 167 (3d Cir.1992)). If the objecting party introduces sufficient evidence to rebut this presumption, the burden shifts to the claimant prove the claim by a preponderance of the evidence. Koloch, 416 B.R. at 378 (citing Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635 (3d Cir.1991)).

Here, Lexington properly executed and filed its proofs of claim pursuant to the Rules. The Debtor has objected and provided evidence that the claims were not timely filed, and that the statute of limitations for a fraudulent transfer claim elapsed before Lexington filed its claims in

---

[4] Although the Motion to Expunge was directed to all three of Lexington's claims, only the objections to Claims Nos. 3 and 5 were addressed at trial. (JPTO ¶ 4, ECF No. 112.)

this case. The Debtor also noted that the underlying judgments on which the claims are based are against Esther, not the Debtor. Any one of these would be grounds to disallow Lexington's claims. Thus, the burden of proof has shifted to Lexington to prove the validity of its claims.

A.     Timeliness of the Claims

"Generally, a tardily filed proof of claim in a chapter 7 proceeding is not permitted to participate in the distribution to general unsecured creditors." In re Feldman, 261 B.R. 568, 575 (Bankr. E.D.N.Y. 2001). Further, Fed. R. Bankr. P. 9006(b)(3) prohibits the court from enlarging the time to file claims in a chapter 7 case, except in the limited circumstances provided in Fed. R. Bankr. P. 3002(c). Id. (citing In re Elmont Electric Co., Inc., 206 B.R. 41, 43 (Bankr.E.D.N.Y.1997)). Late-filed proofs of claim may receive a distribution, however, if the creditor did not have notice or actual knowledge of the case in time to meet the bar date. Feldman, 261 B.R. at 575; 11 U.S.C. § 726(a)(2)(C).

Here, the deadline for filing proofs of claims in this case was July 10, 2014. Lexington initially filed its proofs of claim on January 7, 2015, 181 days after the Bar Date. As a result, Lexington would not ordinarily be entitled to participate in a distribution from the estate. Lexington had knowledge of the initial filing of the bankruptcy case, but did not appear or otherwise participate in the case. No bar date was set at that time because the case was designated a no asset case and closed without a distribution. (Objection ¶ 4, ECF No. 52.) Upon the Trustee's discovery of assets, the case was reopened and a bar date was set. Lexington, however, did not receive notice of the reopening of the case or of the bar date. (See Certificate of Service, ECF No. 23; Order Reopening Chapter 7 Case, ECF No. 27; Objection ¶ 3, ECF No. 52.) Once Lexington received notice, it promptly filed its claims. (Objection, ¶ 3, ECF No. 52.) The due process clauses of the Fifth and Fourteenth Amendments entitle creditors to reasonable notice of the bar date for

7

filing proofs of claims. See In re Drexel Burnham Lambert Group, Inc., 151 B.R. 674, 679-82 (Bankr. S.D.N.Y. 1993) (discussing the requirements of due process with respect to notice of bar dates).[5] Therefore, Lexington's claims will not be disallowed based upon late filing, and it may participate in any distribution, to the extent it has a claim, pursuant to § 726(a)(2)(C) of the Bankruptcy Code.

B.      Statute of Limitations

Lexington must also show that its claims were filed within the statute of limitations for fraudulent transfers under New York law. Lexington is asserting claims based on § 276 of the NY DCL, which provides that "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. The statute of limitations for such a claim is six years. N.Y. C.P.L.R. § 213; see also Orr v. Kinderhill Corp., 991 F.2d 31, 34-35 (discussing the statute of limitations under New York's Debtor & Creditor Law).

All the alleged fraudulent transfers in this case occurred more than six years prior to January 7, 2015, the date when Lexington filed its claims. The statute of limitations, however, was tolled by both the filing of the bankruptcy case and the death of the Debtor. Pursuant to N.Y. C.P.L.R. § 204(a), if "commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced." N.Y. C.P.L.R. § 204(a). When the Debtor filed the bankruptcy case on April 8, 2011, the automatic stay came into effect under § 362 of the Bankruptcy Code, preventing Lexington from commencing any action against the Debtor. The stay terminated pursuant to § 362(c)(2) of the Bankruptcy Code on July 20, 2011, when the debtor received his discharge. The period from

---

[5] No party presented any evidence that notice was made by publication and the docket in this case does not reflect any such notice.

April 8, 2011 to Jul 20, 2011 is 103 days. In addition to the toll provided by the automatic stay, the statute of limitations for Lexington's claims was also extended by the death of the Debtor. Under § 210 of the N.Y. C.P.L.R., the death of the person against whom a cause of action may be asserted extends the statute of limitations by 18 months. Subtracting 18 months and 104 days from January 7, 2009 yields a cut-off date of March 26, 2007. Therefore, any transfer that occurred after that date would be within the statute of limitations for Lexington's claims. The Chase Mortgage was taken out on September 17, 2007. Thus, if that obligation was incurred with actual intent to hinder, delay, or defraud Esther's creditors, Lexington has a claim against the Debtor.

C.     Fraudulent Conveyance

Section 276 of the NY DCL makes every conveyance made or obligation incurred with actual intent to hinder, delay, or defraud creditors fraudulent as to those creditors. N.Y. Debt. & Cred. Law § 276. To prove a claim for a fraudulent conveyance, the creditor must show that "(1) the thing disposed of must be of value, out of which the creditor could have realized a portion of his claim; (2) it must be transferred or disposed of by the debtor; and (3) it must be done with intent to defraud." Goscienski v. Larosa (In re Montclair Homes), 200 B.R. 4, 96 (Bankr. E.D.N.Y. 1996) (citing Hoyt v. Godfrey, 88 N.Y. 669 (1882)). Such intent to defraud must be shown by clear and convincing evidence. Montclair Homes, 200 B.R. at 96 (citing United States v. McCombs, 30 F.3d 310 (2d Cir. 1994)). Actual fraud is rarely susceptible to direct proof and is typically shown by circumstantial evidence through the "badges of fraud." Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1583 (2d Cir. 1983). Those badges include:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

9

> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
>
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>
> (6) the general chronology of the events and transactions under inquiry.

Id. at 1583-84. In particular, the transfer of property to a family member for no consideration, while continuing to use and enjoy the property, is a classic badge of fraud. Id. at 1584.

In this case, the August 29 Transfer from Esther and the Debtor to Libi bears all the hallmarks of a transfer made with actual intent to hinder, delay, or defraud creditors: the transfer was made for no consideration to a close family member; Esther and the Debtor continued to reside in the Property; and this transfer was done at a time when Esther had several unpaid judgments against her. This transfer, however, as well as the April 3 Transfer, the WaMu Mortgage, and the March 16 Transfer, is outside the statute of limitations. The only transfers that fall within the statute of limitations are the October 2 Transfer and the Chase Mortgage. The October 2 Transfer, however, was done after the Property had been fully encumbered by the Chase Mortgage. Further, this transfer did not affect the ability of a creditor to collect on a debt from Esther as the only result of the transfer was to remove Libi from the title. Therefore, the only potential fraudulent transfer that could result in a claim recoverable by Lexington is the Chase Mortgage. As Esther was not a party to the Chase Mortgage, Lexington must show, by clear and convincing evidence, that the transfer was part of an overall scheme, initiated and guided by Esther, to hinder, delay, and defraud her creditors. Lexington has not met that burden.

Crucially, Lexington failed to produce any evidence showing that Esther, Libi, or the Debtor were aware of either the Broadway Ralph Judgment or the Credigy Judgment at the time any of the transfers took place. Lexington did not present any evidence to show that either

judgment was recorded prior to the transfers or present any evidence that either judgment was sent to the Herz family, such as an affidavit of mailing. Throughout the trial, Esther and Libi consistently testified that they were unaware of any judgments against Esther at the time of the transfers. Esther and Libi also both testified that title searches were performed before the transfers and no judgments were discovered. (Trial Tr. 30:14-16, Mar. 1, 2016, ECF No. 109; Trial Tr. 15-11-16, June 1, 2016, ECF No. 113.) Other than simply asserting that Esther was aware of the Broadway Ralph Judgment and the Credigy Judgment on or before April 3, 2006, Lexington has not presented anything to show Esther had actual or even constructive knowledge of any judgments at the inception of her alleged scheme. Absent evidence of this knowledge, the Court cannot find that there is clear and convincing evidence that Esther initiated a multi-part scheme spanning a year and half to avoid paying these judgments.

One of the badges of fraud looks to the general chronology of the alleged fraudulent transfer. Lexington argues that Esther concocted a scheme to remove the house from her name and drain all the equity *prior to* the initial April 3 Transfer. Prior to the April 3 Transfer, the Property was in Esther's name alone and had significant equity available. By the conclusion of all the transfers, the Property was in the Debtor's name alone and had almost no equity remaining. This process, however, took over 18 months and involved several additional steps such as the April 3 Transfer to Esther and the Debtor jointly, and the October 2 Transfer from the Debtor and Libi to the Debtor alone, which did nothing to advance the goal of removing the Property from the reach of Esther's creditors. If Esther's intent was to transfer the Property from her name and deplete the equity, it is unclear why she would employ such a lengthy, complicated, and convoluted process to do so. The general chronology of the transfers in this case does not support a strong inference of fraudulent intent.

Additionally, with respect to the March 16 Transfer from Libi to the Debtor and Libi and the Chase Mortgage, the explanation offered by Esther and Libi of the reasons for these transactions is as plausible as the complex scheme to hinder, delay, or defraud Esther's creditors alleged by Lexington. Libi testified that while she was the sole owner of the property, she received a solicitation from the bank informing her that she could take advantage of certain benefits if she refinanced the Property with the Debtor, a senior citizen, on the title. (Trial Tr. 50:6-52:14, June 1, 2016, ECF No. 113.) Those benefits included cheaper insurance, reduced taxes, and a better interest rate. (Id. at 50:6-50:14.) Esther also testified that such benefits were the impetus for adding the Debtor back to the title of the Property and refinancing. (Trial Tr. 62:23-63:6, 65:8-11, Mar. 1, 2016, ECF No. 109.) Esther and Libi have offered a plausible rationale for the Chase Mortgage, the only transaction which impeded the ability of a creditor of Esther to collect on any judgments that was within the statute of limitations. Thus, Lexington has failed to carry its burden to show by clear and convincing evidence that this transaction was made with actual intent to hinder, delay, or defraud Esther's creditors.

## CONCLUSION

For the reasons stated above, the Motion to Expunge is granted Claim Nos. 3 and 5 of Lexington Insurance Company are expunged. A Separate order will issue.

Dated: Brooklyn, New York
August 30, 2016

_____
**Carla E. Craig**
**United States Bankruptcy Judge**